1

2                   UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
3                        SOUTHERN DIVISION

4    **UNITED STATES OF AMERICA,**

5               Government,          **Case No. 09-cr-20264**
          **-v-**
6

     **MICHELE JOHNSON, also known as**
7    *Angela Jackson*, **also know as**
     *Dianne Anne Johnson*, **also know as**
8    *Nancy Lori Walker*,

9               Defendant.
     _____/
10
                         **Sentencing Hearing**
11
            BEFORE THE HONORABLE **STEPHEN J. MURPHY, III**
12              United States District Judge
            Theodore Levin United States Courthouse
13             231 West Lafayette Boulevard
                    Detroit, Michigan
14              **Friday, July 1, 2010**

15   **APPEARANCES:**

16   FOR THE              **Mr. Louis Gabel**
     GOVERNMENT:          U.S. Attorney's Office
17                        211 West Fort Street
                          Detroit, MI  48226
18                        (313)226-9756
     FOR THE DEFENDANT:   **Ms. Suzanna Kostovski**
19                        Law Offices of Suzanna Kostovski
                          220 Bagley
20                        Suite 1015
                          Detroit, MI  48226
21                        (313)965-6050

22        Also Present:  Ms. Alissa Greer, Courtroom Deputy

23

24        **To Obtain a Certified Transcript Contact:**
          Karen Klerekoper, CSR, RPR - (313)961-1119
25

*Sentencing 7/1/10*                                    2

1                        TABLE OF CONTENTS

2          _____

3
Sentencing.........................................    3
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23
**CERTIFICATE OF COURT REPORTER.........................24**
24

25

1    Detroit, Michigan

2    July 1, 2010

3    At 3:04 p.m.

4                          *       *       *

5            MS. GREER:  All rise.  Court is back in session.

6    You may be seated.

7            The Court calls case 09-20264, United States of

8    America versus Michele Johnson.

9            THE COURT:  Okay.  Mr. Gabel, come on up.

10           Ms. Kostovski and Ms. Johnson, you can come up to

11   the microphone as well and state your names for the record.

12           MR. GABEL:  Good afternoon, Your Honor, Louis

13   Gabel on behalf of the United States.

14           MS. KOSTOVSKI:  Good afternoon, Your Honor,

15   Suzanna Kostovski, appearing on behalf of Ms. Johnson.

16           THE COURT:  Good afternoon, Ms. Kostovski.  You

17   have Ms. Johnson standing there next to you?

18           MS. KOSTOVSKI:  That's correct.

19           THE COURT:  Good afternoon, Ms. Johnson.  As an

20   aside, and before we get started, I see that Hanover versus

21   Metro Equity went away?

22           MS. KOSTOVSKI:  Yes.  That was a very wonderful

23   surprise to the defense.

24           THE COURT:  I don't know what happened, but it

25   was a wonderful piece of news for us, too, so thanks for

1    the hard work on that, although I will miss horsing around

2    with you and Mr. Frank, I guess.

3             All right.  The first issue we have is a motion

4    to withdraw.  I don't know that there is much for you to do

5    here, Ms. Kostovski.  But my understanding is that

6    Ms. Johnson, who we all know was convicted at trial, has

7    not worked with you since the filing of the jury verdict.

8             According to the motion that was filed,

9    Ms. Johnson has actually impeded Ms. Kostovski from filing

10   objections to the presentence report because Ms. Johnson

11   refused to discuss the case, or other matters, with

12   Ms. Kostovski.  Notwithstanding that, Ms. Kostovski did

13   protect the record by filing some objections, which we will

14   take on momentarily.

15            But I think, first of all, I ought to deal with

16   the motion to dismiss and just ask you, Ms. Kostovski, if

17   there is anything beyond what is in your motion or what I

18   have said in court here today that you would like to put on

19   the record now?

20            MS. KOSTOVSKI:  As far as the motion to withdraw,

21   no, Your Honor.

22            I will tell the Court that I did speak about an

23   hour ago with an attorney out of the Brighton, Michigan,

24   area, who apparently has been contacted by someone on

25   behalf of Ms. Johnson to possibly take this matter on

1    appeal.

2           THE COURT:  Okay.

3           MS. KOSTOVSKI:  And that's basically it.  The

4    only other issue is the government filed a sentencing

5    memorandum last Thursday, and I mailed a copy of that to

6    Ms. Johnson on the 25th, the day after.  She said she had

7    not received it by today's date.  So I'm not sure how you

8    are going to deal with that issue, but I would like

9    Ms. Johnson to at least have the opportunity to go over

10   this.

11          THE COURT:  Well, for the convenience and

12   fairness of all involved, I'm going to essentially

13   disregard the government's sentencing memorandum.  I have

14   the benefit of a full trial.  I saw the videotape.  I have

15   a complete probation report and I intend to sentence within

16   the guideline range, and I think that the government is

17   asking for a sentence outside of the guideline range.  So

18   I'll give you an opportunity to talk about your objections,

19   and I will give Ms. Johnson an opportunity to speak, but

20   I'm not going to rely on the sentencing memorandum in a

21   material way.  Okay?

22          MS. KOSTOVSKI:  Your Honor, are you going to rule

23   on my motion first or after --

24          THE COURT:  I'm going rule on your motion first.

25   Anything else you would like to say?

1          MS. KOSTOVSKI:  Not with respect to the motion.

2          THE COURT:  Okay.  How about you, Ms. Johnson?

3   Are you incapable of working with Ms. Kostovski at this

4   point?

5          THE DEFENDANT:  No.

6          THE COURT:  Pardon me?  You want her to continue

7   to represent you?

8          THE DEFENDANT:  Through this proceeding?

9          THE COURT:  Yes.

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  Then I'm going to deny

12   your motion and just ask you to handle the sentencing in an

13   orderly manner and we'll relieve you of your obligations

14   afterwards.

15          It appears that the breakdown that existed

16   subsequent to trial, but prior to the issuance of the

17   presentence report, has been resolved and Ms. Johnson seems

18   comfortable with you at this point now.  Okay?

19          MS. KOSTOVSKI:  Okay, Judge.

20          THE COURT:  Very good.  Thank you very much.

21          Ms. Johnson, have you had an opportunity to read

22   the presentence report in the case?

23          THE DEFENDANT:  Yes, I have.

24          THE COURT:  Okay.  There are minor issues in

25   dispute, and I'll hear from Mr. Gabel on this.  The defense

1    objects to the way paragraph 24 was written, and objects to

2    the way that paragraph 25 was written, submits that the

3    defendant's total offense level would be 17, criminal

4    history 1, with a guideline range of 24 to -- 24 to 30

5    months.  Should two points, as opposed to four, be shaved

6    off, then the offense level would be 19, criminal history

7    category 1, for a guideline range of 30 to 37 months.  The

8    Probation Office noted the objection, stands by its report

9    and calculates a sentencing range of 37 to 46 months based

10   on a criminal history category 1 and an offense level 21.

11        Mr. Gabel, what is your position on the

12   objections and how the Probation Office report should be

13   amended, if at all?

14        MR. GABEL:  Yes, Your Honor.  The government

15   opposes the objections lodged by defendant through defense

16   counsel and agrees with the calculations as calculated by

17   the Probation Department.  I'm happy to explain the

18   government's rationale on both of those.

19        First, with respect to whether she had materials

20   to produce counterfeit money, that clearly was presented to

21   the jury.  I think the argument by defense is the

22   counterfeit was so shoddy that it couldn't really qualify

23   for that enhancement, and that was what the defense

24   presented to the jury.  They rejected that beyond a

25   reasonable doubt.

1          For sentencing purposes, we just have the

2    preponderance standard.  The Court did see the counterfeit

3    during the course of the trial.  It re-created the

4    watermarks, the color, the touch and feel of the money, the

5    security strips.  It clearly was high-quality counterfeit.

6    The jury agreed.  It was so high quality when handling the

7    real money, along with the counterfeit, we had to be very

8    careful not to mix them up for fear that we would not be

9    able to retrieve the counterfeit from the real money.  So

10   that objection is not well founded and should be rejected.

11         I expected the Secret Service agent to be here.

12   I think he will be showing up soon.  He will have some of

13   the counterfeit bills in hand from the trial.  We are happy

14   to present those to the Court to see if the Court agrees

15   that they are counterfeit that would have possibly

16   defrauded and actually did defraud individuals, because we

17   found that serial numbers similar to the bills that

18   Ms. Johnson had had actually successfully been passed to

19   business owners around the Detroit metropolitan area.

20         THE COURT:  Okay.  Second point is that the

21   firearm was not used in connection with the offense.

22   What's your response to that?

23         MR. GABEL:  We believe it was possessed in

24   connection with the offense.  Defense counsel wants to

25   argue that, yes, there was evidence that she had

1    counterfeit bills and, yes, she did have possession of

2    firearms, but they are completely mutually exclusive and

3    the evidence shows that that's not the case.

4            First of all, there is the proximity of the

5    weapons, and I think that's one of the most important

6    points.  She had counterfeit bills and she had the proceeds

7    of her counterfeiting in her purse.  Along with those

8    counterfeit funds and genuine funds, were two loaded

9    firearms.  They were there to protect her in case anybody

10   wanted to disrupt her counterfeiting activities or take the

11   proceeds, which was nearly $14,000 of genuine currency.

12           Now, with respect to the counterfeit currency in

13   the trunk, if she had to actually go back to her trunk to

14   deal counterfeit money, which she agreed she was meeting

15   people out on the street, so-called runners, which she

16   would give large bundles of counterfeit money.  If she had

17   to go to her trunk to retrieve counterfeit to pass to the

18   street runners, she had to be armed there as well.  So she

19   had the gun in her trunk in close proximity to the

20   counterfeit funds in her trunk.  In fact, the gun was in

21   the same laundry bag where the counterfeit funds were

22   found.  So the evidence, I believe, beyond a reasonable

23   doubt, clearly by a preponderance, shows that those

24   firearms were possessed in connection with her

25   counterfeiting crimes.

 1          THE COURT:  Okay.  Ms. Kostovski, you filed your

 2     motion.  I read it.  We have now heard the government's

 3     response.  You've also seen the response from the Probation

 4     Department.  Any other argument you would like to lodge

 5     with regard to the two objections you made to the

 6     presentence report?

 7          MS. KOSTOVSKI:  Well, just a couple things.

 8     First, Your Honor, it's not just the issue of how well the

 9     money was made that you need to consider when considering

10     this two-level enhancement.  The Ninth Circuit has said

11     that just possession of counterfeit-making materials is not

12     sufficient, and keep in mind that the government did not

13     charge Ms. Johnson with manufacture.

14          I also want to remind the Court that they

15     brought, I believe, a second or third superseding

16     indictment after the agent supposedly discovered these two

17     floppy disks -- not floppy disks, but these flash drives.

18     In a subsequent search of those flash drives, they

19     supposedly found this counterfeit-making material, so they

20     had an opportunity to charge Ms. Johnson with manufacture,

21     but they did not.  And I don't think they -- I think they

22     didn't do that because -- for two reasons -- one, I don't

23     think they could prove it; and two, I think they were going

24     to backdoor that argument here to try enhance her sentence

25     by a preponderance standard as opposed to proof beyond a

1    reasonable doubt.

2           Secondly, with respect to the gun enhancement

3    issue, again, she was charged with possession of an

4    obliterated serial number, a weapon.  I don't recall any

5    testimony, and Your Honor sat through this court -- sat

6    through the trial where they made any connection.  I mean,

7    their whole focus was she had these weapons and one of them

8    had an obliterated serial number.  I don't recall anybody,

9    including the agent, testifying that this was in relation

10   to the counterfeiting crime here.  Mere possession is not

11   enough.

12          THE COURT:  Okay.  Sorry to interrupt you, but I

13   guess my recollection is, I rule on this objection -- and

14   you correct me if I'm wrong -- that's what Special Agent

15   Brunson's presence was for.  He not only talked about the

16   interstate connection or nexus of the firearms, but stated

17   that in his experience, the location of the firearms

18   indicated that they would be -- they would be used in the

19   fashion that Mr. Gabel argues here today.

20          Am I wrong about that, Mr. Gabel?

21          MS. KOSTOVSKI:  I don't recall Special Agent

22   Brunson -- I know he came in here to testify about these

23   being in interstate commerce.  They were produced out of

24   state.  I don't recall that testimony and I don't have my

25   trial notes with me, Judge; but I don't recall that.

1            I think if -- the other matter that I think is

2    objectionable is, Mr. Gabel said that Ms. Johnson admitted

3    to dealing the counterfeit from the trunk of the car.  I

4    don't recall any testimony.  I think he's trying to bring

5    to this Court a supposed statement that she gave, which the

6    Court said was not coming in, and now he is using it here

7    to say that that's what she was doing.

8            MR. GABEL:  Your Honor, if I may --

9            THE COURT:  Short rebuttal.

10           MR. GABEL:  -- Agent Brunson.  I note there was

11   testimony regarding the proximity of the guns to the

12   counterfeit funds.  I'm not sure if that came in through

13   Agent Brunson.  But Agent Brunson did testify to the fact

14   that the serial number on one of the guns was punched out

15   and, therefore, making it unable to be traced and,

16   therefore, more useful to be used in connection with other

17   crimes.

18           THE COURT:  All right.  With regard

19   to -- anything else from either side?

20           MS. KOSTOVSKI:  No, Your Honor.

21           THE COURT:  With regard to objection number two,

22   the Probation Department applied a two-point increase under

23   2B5.1(b)(4), and elevates the offense level by two, given

24   the fact that guns were presumably or allegedly used in

25   connection with the overall offense of counterfeiting.  I

1    find that the adjustment is proper and appropriate.  My

2    recollection of the -- in fact, I don't really think this

3    one is even close.  My recollection of the -- which doesn't

4    mean you shouldn't have made it.  I think it's a valid

5    objection.  But the fact that you have two loaded weapons

6    with flash drives in your purse, and $32,000 of counterfeit

7    money in the trunk, would seem to indicate to me that

8    you're -- especially in the circumstances under which we

9    know she was arrested after being at a hotel with an

10   individual who repaired her car, it would seem to me to be

11   well beyond a preponderance of the evidence for the Court

12   to conclude that the firearms were used in connection with

13   the counterfeiting offense and that 2B5.1B4 therefore

14   applies.

15           I think that objection number one is a closer

16   call.  The defendant essentially states that the notes

17   which were introduced at trial were of very poor quality

18   and obviously counterfeit and that an enhancement for

19   materials used for counterfeiting would not be appropriate.

20           The Probation Office has responded that in

21   addition to the currency, there were two flash drives with

22   images of the counterfeit bills, re-creations of security

23   images, and other materials that were taken from the

24   defendant's purse.

25           Mr. Gabel additionally argues here today that the

1    images on the flash drive indicated there were some other

2    materials used to make counterfeiting materials.  And

3    granted, the fact of the matter is that the government did

4    not charge manufacture, they charged possession, as well as

5    the firearms, and maybe those were the most readily

6    provable offenses.  But I do think that there is certainly

7    sufficient evidence on a preponderance basis to conclude

8    that Ms. Johnson did, in fact, possess materials or had

9    custody of materials used for counterfeiting and,

10   therefore, the two-point enhancement under 2B5.1(b)(2)(A)

11   should apply as well.  So I will overrule both objections

12   and receive the report as written.

13           With that in mind, are there any other factual or

14   legal issues about the report that we have not addressed,

15   Mr. Gabel?

16           MR. GABEL:  No, Your Honor.

17           THE COURT:  Ms. Kostovski?

18           MS. KOSTOVSKI:  No, Your Honor.

19           THE COURT:  With that in mind, I conclude that

20   the criminal history category here is 1, and that the

21   overall offense level is 21, and that the sentencing range

22   is 37 to 46 months.  There is no request for a departure

23   from the defendant, nor do I find one is legally

24   authorized.  Mr. Gabel suggests a 24-month increase in the

25   overall offense level to a sentence of 72 months, but as I

1    stated before, I don't consider that to be appropriate

2    here.  Under the 3553 factors, I think that a guideline

3    sentence fulfills everything that Congress wanted this

4    Court to accomplish by sentencing and I, therefore, intend

5    to sentence within the 37- to 46-month range.

6              Ms. Kostovski, any remarks you would like to make

7    on behalf of the defendant at this time?

8              MS. KOSTOVSKI:  Well, Your Honor, I would ask

9    that you consider a sentence at the bottom of the guideline

10   range, taking into consideration that Ms. Johnson has been

11   incarcerated the whole time since this case started.

12             I won't restate the history of this case.  You

13   know it very well.  It's been a difficult case.  But I

14   don't think that the Court should take that out on

15   Ms. Johnson at this juncture.  I think the Court should

16   consider the 3553 factors and fashion a sentence that would

17   be appropriate, and I believe 37 months would be an

18   appropriate sentence here.

19             THE COURT:  Very good.  Thank you very much,

20   Ms. Kostovski.

21             Ms. Johnson, is there anything you would like to

22   say at this point on your own behalf?

23             THE DEFENDANT:  No, Your Honor.

24             THE COURT:  Nothing?

25             THE DEFENDANT:  (Indicating).

1          THE COURT:  Okay.  Thank you very much.

2          Mr. Gabel, counsel for the government may now

3     lodge any remarks that you would like to make.

4          MR. GABEL:  Thank you, Your Honor.

5          I know the Court has already indicated that it

6     believes that a guideline sentence is appropriate and we

7     ask for six years.  And when I first thought of what the

8     appropriate sentence for Ms. Johnson would be, my knee-jerk

9     reaction was, given the difficulty she had posed and the

10    frustrating nature of how she handled these court

11    proceedings, was that a severe sentence was necessary.  But

12    it's part of our office's job and this Court's job to deal

13    with frustrating litigants, so that's really not an

14    appropriate consideration at sentencing.

15         But then I thought about her conduct in this case

16    and how it relates to the 3553(a) factors, and I do

17    believe, and I renew our request, for a sentence above the

18    guidelines, and that's because her conduct in this case

19    demonstrates the characteristics of the defendant.  She has

20    exhibited no remorse for her crimes, no remorse for the

21    victims who she duped out of money.  She has not apologized

22    or exhibited any remorse for the officers who were in

23    harm's way when they arrested her when she had possession

24    of three loaded firearms.  I have no reason to believe that

25    the defendant is going to change her ways.  As she

1   increases in age, the severity of her conduct and the

2   seriousness of her criminal activity increases.  She

3   presents as a person who simply won't be deterred and I

4   believe she will return to crime once she is released.  She

5   has shown she has no respect for the law and all of these

6   factors are legitimate 3553(a) factors, and her conduct in

7   this case weighs on those factors.  But I don't want that

8   to overshadow the seriousness of her conduct in this case.

9   And the Court is well aware of her conduct in possessing

10  the firearms, fleeing from law enforcement, lying to law

11  enforcement, stealing individuals' identities, a number of

12  things that simply are not reflected in the guidelines;

13  therefore, the government believes the guidelines are too

14  low.

15          When you look at the statutory range that

16  Congress allows in this case, zero to 20 years, the

17  government's position is that she falls, if not at the high

18  end for her conduct -- because this is not a garden-variety

19  counterfeiting offense.  This is one of the more serious

20  ones that I have seen in my admittedly short time in the

21  U.S. Attorney's Office.  It's not a garden-variety offense.

22  It skews towards the midpoint of where Congress allows the

23  Court to sentence individuals who are convicted of

24  counterfeiting.  So in that zero to 20-year range, we

25  believe the 6-year mark is the appropriate sentence.

1          Thank you.

2          THE COURT:  Thank you very much.

3          The first thing I would like to say is, the first

4     time I had the parties appear before me on this case, I

5     expressed a great deal of frustration with Ms. Johnson as

6     well, and I was concerned that she had -- she had been

7     through four attorneys at that time, Ms. Kostovski being

8     her fifth.  I also sent Ms. Johnson for a psychiatric exam,

9     because the more I became involved and knowledgeable of the

10    case, the more I was concerned that she wasn't fully aware

11    of the gravity of what confronted her, but the results of

12    that evaluation proved otherwise.  I really think we just

13    have, very simply, a person who fits the profile of a

14    person who is convicted of criminal behavior and hasn't

15    accepted responsibility for her crimes.

16          I've attempted -- and frankly, the government and

17    the three defense attorneys that I was most familiar with

18    in the case all did yeoman work to attempt to get her some

19    help, but she doesn't want any help.  I don't dispute many

20    of the things that you say, Mr. Gabel.  In fact, I'm

21    extremely, extremely troubled by that car chase, because

22    that, in an act of gross irrationality, not only endangered

23    the officers but a number of innocent people in the

24    neighborhood as well, and I think I could probably depart

25    from the guideline range upward on that basis alone.  But

1    I'm not going to because I think it's a job of the Court to

2    put aside personal concerns and to sentence in an

3    honorable, decent fashion that establishes deterrence,

4    punishment, and some sort of effort at rehabilitation upon

5    release.  And that's what I'm going to do here.  And I'm

6    not going to let my frustration, to the extent I have any

7    -- and I really don't have any left anymore, get the better

8    of me, in this particular case.

9            Accordingly, I will state the sentence and I will

10   give both lawyers an opportunity to make any legal

11   objections before it's finally imposed.

12           As to Counts One and Two on the first superseding

13   indictment, pursuant to the Sentencing Reform Act of 1984,

14   the Court has considered the sentencing guideline factors

15   fully and has also gone through its analysis under 18

16   U.S.C. Section 3553(a), I hereby commit the defendant,

17   Michele Johnson, to the custody of the United States Bureau

18   of Prisons to be imprisoned for a period of 46 months on

19   each count, to be served concurrently.  A facility that

20   offers mental health treatment and educational and

21   vocational programming is highly recommended for her

22   placement.  A $100 special assessment on each count for a

23   total of $200 is ordered, and that's due forthwith.

24           The Court waives imposition of a fine and the

25   cost of supervision due to the defendant's inability to

1    pay.  And upon release from imprisonment, the defendant

2    shall be placed on a term of supervised release for a

3    period of three years on each count.  That's concurrent as

4    well.  The mandatory drug testing condition is imposed.

5            While on supervision, the defendant shall abide

6    by the standard conditions adopted by the U.S. Probation

7    Office for the District Court of the Eastern District of

8    Michigan and shall comply with the following special

9    conditions.  There is a potential substance-abuse history

10   here, so number one, if necessary, the defendant shall

11   participate in a program approved by the Probation

12   Department for substance abuse, which may include testing

13   to determine whether the defendant has reverted to the use

14   of drugs or alcohol.

15           There are, in my view, very possible and

16   significant unresolved mental health issues, and

17   accordingly, on supervised release, if necessary, the

18   defendant shall participate in a program approved by the

19   Probation Department for mental health counseling.  That

20   will be the sentence of the Court.

21           Anything you would like to say in response to

22   what I have just imposed that you haven't already said,

23   Ms. Kostovski?

24           MS. KOSTOVSKI:  No, Your Honor.

25           THE COURT:  Mr. Gabel?

*U.S.A. v Johnson 09-cr-20264*

1          MR. GABEL:  No, Your Honor.

2          THE COURT:  Is any --

3          MS. KOSTOVSKI:  Your Honor?

4          THE COURT:  Go ahead.

5          MS. KOSTOVSKI:  She was asking me whether she has

6    to do this at the Wayne County jail, and I said no.  You're

7    are going to the Bureau of Prisons?

8          THE COURT:  Right.  We'll speak to that in a

9    minute, but I'm glad you asked that question, but I will

10   answer it as I go through the remainder of my remarks here.

11         I hereby order the sentence that I just stated to

12   be imposed.

13         Ms. Johnson, you have the right to appeal your

14   conviction and sentence in this case.  If you believe that

15   you want to appeal and you have the right, which I just

16   instructed you, you may consider doing so in forma

17   pauperis, which means without having to pay fees.  The

18   Clerk of the Court will prepare and file a Notice of Appeal

19   upon your request, with very few exceptions.  Any Notice of

20   Appeal must be filed within ten days of the entry of

21   judgment, which will probably occur tomorrow at the very

22   latest.

23         The defendant is in custody and hereby remanded

24   to the custody of the Marshal for the service of the

25   sentence.  I don't know exactly where you're housed at

*Sentencing 7/1/10*                                                        22

1    right now, but you're at a temporarily facility which eased

2    your appearance for trial and this proceeding.  Shortly the

3    Marshals will move you to a federal correctional facility

4    for service of your sentence and mental health treatment

5    and work, and other things.  But that's up to the Bureau of

6    Prisons, not me.  They will let you know where you are

7    going to go.

8           I want to verify for the record that both parties

9    have copies of the presentence report, correct?

10          MS. KOSTOVSKI:  Correct.

11          MR. GABEL:  Correct.

12          THE COURT:  We will furnish you with amended

13   copies reflecting any corrections and resolutions of issues

14   that we resolved today.  A complete corrected copy is going

15   to be prepared for the Bureau of Prisons, as well as the

16   Sentencing Commission.  I just admonish both counsel, as

17   they well know, that any copies of the PSR is strictly

18   confidential.

19          If Ms. Johnson appeals, counsel on appeal is

20   going to be permitted access to the report and any

21   recommendations submitted to me by the Probation Department

22   will not be disclosed to counsel and there won't be access

23   to recommendations, in any event.  Okay?

24          Anything from either side?

25          MS. KOSTOVSKI:  Judge, I just have a couple

 1    questions.

 2              THE COURT:  Of course.

 3              MS. KOSTOVSKI:  Am I now relieved of my --

 4              THE COURT:  Yes.

 5              MS. KOSTOVSKI:  -- court-appointed duties?

 6              THE COURT:  You're discharged.

 7              MS. KOSTOVSKI:  I'm discharged.

 8              The second question is, does the Court have a

 9    notice of appeal form or in forma pauperis form that we can

10    give to Ms. Johnson so she can request an appeal?

11              THE COURT:  I don't know.  Ms. Greer, I don't

12    think she has one at her side right there, but through the

13    Federal Defender's Office and the Clerk, we will line her

14    up with whatever she needs to get to file a Notice of

15    Appeal, if that's what she wishes to do.  Okay.

16              Anything else?

17              MS. KOSTOVSKI:  No, that's it.

18              THE COURT:  Mr. Gabel?

19              MR. GABEL:  No, Your Honor.

20              MS. KOSTOVSKI:  Thank you.

21              THE COURT:  Good luck to you, Ms. Johnson.  I

22    want to thank, as I have done several times in the past,

23    the lawyers in the case for their continued good advocacy

24    and professional conduct.  We will adjourn now.

25              MS. GREER:  All rise.

*Sentencing 7/1/10*                                                    24

1          (Proceedings concluded at 3:36 p.m.)

2

3

4                    **CERTIFICATE OF REPORTER**

5          As an official court reporter for the United

6    States District Court, appointed pursuant to provisions

7    of Title 28, United States Code, Section 753, I do hereby

8    certify that the foregoing is a correct transcript of

9    the proceedings in the above-entitled cause on the date

10   hereinbefore set forth.

11

12

13                   ___s/ Karen Klerekoper___

14                   KAREN KLEREKOPER, CSR, RPR

15                   Official Court Reporter

16

17

18

19

20

21

22

23

24

25